### John S. Williams *versus* Daniel Williams.

Where the master takes a vessel on shares, "to account to the owner for one half the earnings," he is, as to all persons but the actual owner, in all contracts, regarded as the owner, and entitled to all the rights and liable to all the duties of an owner; but as between him and the real owner, the "earnings, when collected, are equally the money of the owner and the master, and the latter becomes a trustee of the owner's share, when received, and holds it for his use.

And if a third person, knowing all the facts, is authorized by the master to receive the freight already earned, and promises to pay the owner his share, and afterwards receives the money, he holds it for the use of the owner, who may maintain a suit against him therefor.

The whole of the testimony given at the trial, before Tenney J. appears in the report of the case. The substance of it is concisely stated in the opinion of the Court. A nonsuit was entered by consent, which was to be set aside and a default entered, if the Court, upon a view of the whole case, should think the plaintiff was entitled to recover.

*M. H. Smith,* for the plaintiff, said the money was collected by the commission merchants in New York and credited to the master and owners of the Orbit; that the captain had received his share, and thus severed it from that of the owner; that the defendant specially agreed to obtain this money from the commission merchants and pay it over to the plaintiff; and that the defendant at the time knew all the facts.

The money belonged to the plaintiff, and the defendant is liable on his promise to pay it over to him, when received.

*Ruggles* and *J. S. Abbott,* for the defendant, contended, that the money belonged wholly to the master; that the half earnings of the vessel, was but the measure of the amount to be paid for the charter of her; that the claim of the plaintiff

was merely a personal one on the master; and that the de-
fendant was accountable for the money to the master only. It
has been decided, that where the master takes the vessel, to be
sailed on shares, that the freight money is the property of the
master. *Thompson* v. *Snow*, 4 Greenl. 264.

What the defendant said respecting paying over the money
to the plaintiff, if it should come into his hands, must be un-
derstood merely, that he would pay it to the owner, if he had
authority for it from the master. It could not . have been the
expectation of either party, that the defendant was to pay to
the plaintiff the money belonging to another, against his will;
nor would the defendant be bound by such promise.

The opinion of the Court was drawn up by

SHEPLEY J. — This suit is brought to recover one half of
the freight money earned by the schooner *Orbit*, between the
seventeenth day of March and the sixth day of July, 1837.
The report of the case shows that the plaintiff was the sole
owner of the vessel during that time, and that she earned a
freight, for which there was received on a final settlement
for it, the sum of $1200. That Oliver Williams was during
that time master, having before taken the vessel on shares, "to
account to the owners for one half the earnings." When he left
the vessel, before July 6, 1837, he employed Messrs. Badger
& Peck, of New York, to collect the freight, which after
some difficulty was collected by them on or about the 24th of
January, 1838. They, on March 1, 1838, by order of the mas-
ter, transmitted the balance thereof, after satisfying their claims
against him, to the defendant. The master being a son of the
defendant, it appears from the testimony, that he was applied
to in the summer or fall of 1837, for assistance to obtain the
earnings of the vessel from New-York, and that he promised
it; that he was again called upon in April, 1838, and that
he then said, when he got the money he would pay it over.
Another witness speaking of this last conversation says, that
the defendant said, if it came into his hands he would forward
it to the owners. It appears from the correspondence between

the defendant and Messrs. Badger & Peck, that he was inform-
ed of the whole amount of freight earned, and what portion of
it had been by them detained for claims against his son.  By a
letter from the master to Horace Williams, another son of the
defendant, payments were directed to be made from the
amount to be received of $100 to Mr. Leighton, and of $50
to Andrew Williams, which were made.  It is also contended,
that by another letter bearing date June 20, 1838, to the same
person, he directed, that $400 more of the same money should
be transmitted to him at St. Louis ; but the letter on inspec-
tion does not appear to direct that the $400 should be trans-
mitted from any particular fund.

The question arises, whether under such circumstances the
owner of the vessel had such a right to one half of her earn-
ings, that he could insist upon a payment of them from the de-
fendant to himself, after they had been collected and transmit-
ted.  According to the cases of *Thompson* v. *Snow*, 4 Greenl.
264, and *Cutler* v. *Winsor*, 6 Pick. 335, the master must be
considered as the owner *pro hac vice*.  And it follows that in
all contracts for the shipment of goods and the procurement of
materials and supplies, he alone would be liable, and he alone
could enforce them.  He alone would be entitled to settle her
bills and collect her freights.  And with respect to all persons
but the real owner, he would in all contracts be regarded as the
owner and entitled to all the rights and liable to all the duties
of an owner.  What relation does he sustain to the real own-
er ?  It is contended, that it is simply that of hirer of the ves-
sel, as it would be under a charter-party providing for the pay-
ment of a stipulated sum by the month or for the voyage.  But
it may well be distinguished from such a case, and from all
others, where the owner's compensation does not depend at all
upon the earnings of the vessel.  The contract in this class of
cases can only be like those, by considering it a contract to pay
a sum of money for the hire of the vessel equal to one half of
her earnings.  But this would not fully meet either the terms
of the contract or the intention of the parties.  If it was in-
tended to be a sum equivalent to the earnings, there would be

occasion to fix the time and terms of payment. If on the contrary the intention be, what the contract speaks, that each shall be entitled to a share of the freight money itself as earnings, then the time and terms of payment arise out of the contract itself. In the contracts of this class noticed, all appear to have reference to the earnings of the vessel as a fund to be shared, and to a portion of which each is to be entitled. The earnings of the vessel are usually spoken of as belonging to the respective parties to such a contract. Parker C. J. in the case of *Coggeshall* v. *Read*, 5 Pick. 457, speaking of the rights of the parties to such an agreement, when the owner of one-fourth had taken the other three-fourths of the vessel on shares, says, "by this agreement one half of the earnings of three-fourths of the vessel would belong to the defendant and others as owners of the three-fourths, and the other half would belong to the plaintiffs and Wilde, as owners of one-fourth and hirers of the residue." If the true character of the contract, and the intention of the parties be, that the earnings themselves, when collected, should belong in equal proportions to the owner and the master, who has taken the vessel on shares; then the character, in which he acts in making the collection, is that of one, who is collecting the earnings for himself and another; and so far as it respects the other, he becomes a trustee, and holds his share of the money, when collected, for his use, to be paid over to him within a reasonable time after it has been received. And it may well be believed to be upon this intention of the parties to such a contract and upon their understanding of its terms, that owners of vessels are found willing to allow masters, whose contract to pay a stipulated sum would not be received, to take vessels on shares, relying upon their being trustworthy, and that they will lay by the owners' share of the earnings and pay it over on their arrival; and feeling confident, that a creditor of the master could not deprive them of it. Suppose the master to become a bankrupt after collecting the freight so earned, would not a court of equity, if it were found in the hands of his assignee, preserve it for the owner of the vessel, instead of turning him over to the

general fund to take his dividend? If the earnings, when collected, are to be considered as a specific fund for the benefit of the respective parties, those entitled would seem to be able upon well established principles to follow and claim their share of it from any one, into whose hands it may have come with a full knowledge of the facts. And a payment made by such a holder to an equitable owner of a share would constitute a perfect defence against the master, who must fail to establish any equitable right to recover against the real owner of the vessel.

If these doctrines be applied to the facts in this case the result will be, that one half of the freight of $1200 belonged to the plaintiff, as soon as it was collected, that the defendant received of it $693,62 knowing the whole facts, and that the residue had been applied by the master to his own use; that the sum he received was subject to other claims of the master to the amount of $150, leaving something less than his share unincumbered for the owner in his hands. This he had promised to pay when received. There was nothing to prevent a performance. It has long since been decided, that a promise, by one liable to pay to some person, to pay to one equitably entitled, may be enforced. The payment of the $400 to the son, in the summer of 1838, does not appear to have been made from this fund, and if it did, it was made with a knowledge that he was not equitably entitled to it, and in violation of his promise, and in fraud of the plaintiff's rights. The plaintiff is therefore entitled to recover of the defendant the sum of $543,62, being the balance in his hands after deducting the $150, paid out, with interest thereon from the time of its reception.